UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| MICHAEL S. ELKINS, | Civil No. 06-0335 (PJS/FLN) |
| Petitioner, | |
| v. | ORDER DENYING 28 U.S.C. § 2241 PETITION |
| WARDEN CAROL HOLINKA, | |
| Respondent. | |

---

Michael S. Elkins, *pro se*.

W. Anders Folk, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, for defendant.

Petitioner Michael S. Elkins is currently serving a 24-month sentence for bank fraud in the Federal Correctional Institution in Florence, Colorado.[1]  At issue in this case is whether

---

[1] Elkins was incarcerated in the Federal Correctional Institution in Waseca, Minnesota at the time that he filed this petition.  The Bureau of Prisons ("BOP") transferred Elkins to Florence in April 2006, and he is thus no longer in the custody of the respondent.  *See* Docket No. 15.  At first glance, this transfer would seem to create a jurisdictional problem.  *See Copley v. Keohane*, 150 F.3d 827, 830 (8th Cir. 1998) ("[A] subsequent transfer of the prisoner will not defeat habeas jurisdiction, but only 'so long as an appropriate respondent with custody remain[s]' in the district") (quoting *Jones v. Cunningham*, 371 U.S. 236, 243-44 (1963)).  However, this Court has held that a transfer from one federal facility to another does not destroy jurisdiction.  *See, e.g.*, *Dortch v. Morrison*, No. 05-2873 (JRT/AJB), 2006 WL 2788181, at *1 n.1 (D. Minn. Sept. 26, 2006); *Wallace v. Morrison*, No. 05-435 (JNE/SRN), 2006 WL 1579854, at *1 n.1 (D. Minn. June 1, 2006); *Wright v. Lacy*, 664 F. Supp. 1270, 1271 n.1 (D. Minn. 1987); *see also McCoy v. U.S. Bd. of Parole*, 537 F.2d 962, 966 (8th Cir. 1976) (subsequent transfer of prisoner did not destroy jurisdiction over parole board).  The Court will therefore resolve this case on the merits and will refer to the respondent as "the United States."

Elkins began serving this federal sentence on January 6, 2005, as Elkins contends, or on December 6, 2005, as the United States contends.[2]

Elkins filed a petition for habeas corpus under 28 U.S.C. § 2241 on January 24, 2006. This matter is before the Court on Elkins's objections to the November 21, 2006 Report and Recommendation ("R&R") of Magistrate Judge Franklin L. Noel. Judge Noel recommends denying Elkins's petition.[3] For the reasons stated in the R&R and the additional reasons set forth below, the Court accepts that recommendation and denies Elkins's petition.[4]

I.  BACKGROUND

Then-Chief Judge J.P. Stadtmueller of the United States District Court for the Eastern District of Wisconsin imposed a 24-month sentence on Elkins on September 18, 1997.  Docket No. 17 Ex. A.  Judge Stadtmueller ordered that this federal sentence be served consecutively to sentences imposed in two state-court criminal cases, which the parties identify by their case numbers:  91-CR-1101 and 95-CM-1895.  Docket No. 17 Ex. B.  Case number 91-CR-1101 included two sentences: a ten-year sentence in 91-CR-1101D and a five-year sentence in 91-CR-1101B.  Burke Decl. Ex. E.

These sentences were not the first, nor the last, to be imposed on Elkins.  After Elkins was sentenced by Judge Stadtmueller, Elkins was sentenced to another state prison term in 97-

---

[2]Elkins's petition also contains a claim for credit for time he spent in custody from December 11, 1996 to April 28, 1997.  Pet. ¶¶ 5, 8.  Judge Noel found that Elkins dropped this claim, and Elkins does not object to that finding.

[3]Elkins also filed a number of other motions, which Judge Noel recommends denying. Elkins has not objected to Judge Noel's recommendation, and the Court accordingly adopts it.

[4]The Court's reasoning differs in some respects from Judge Noel's.  To the extent that the Court's findings of fact or legal analysis differ from the R&R's, this order obviously controls.

CF-494.  Docket No. 17 Ex. I.  That sentence was ordered to be served consecutively to two other, earlier state sentences:  93-CM-564 and 94-CM-031.  Docket No. 17 Ex. I.  In total, it appears that Elkins has been sentenced seven times in state court (including the two sentences in 91-CR-1101) and once in federal court.  Burke Decl. Ex. E.  Elkins completed the state sentences on December 6, 2005, and was taken into federal custody on that date.  Pet. ¶ 19.

## II.  ANALYSIS

### A.  Elkins's State Sentences

Elkins contends that he completed his sentence in 91-CR-1101 on January 5, 2005.  Pet. ¶ 14 & Ex. H.  Elkins further contends that, because Judge Stadtmueller ordered that his federal sentence run consecutively to his sentence in 91-CR-1101, and because his sentence in 91-CR-1101 was completed on January 5, 2005, Elkins began to serve his federal sentence on January 6, 2005.

The United States denies that Elkins's sentence in 91-CR-1101 was completed on January 5, 2005, as Elkins contends.  The United States argues that Elkins did not complete his sentence in 91-CR-1101 until December 6, 2005.[5]

---

[5] Elkins submitted a document entitled "Sentence Computation" dated September 25, 1997.  That document identifies the "Mandatory Release Date" for both 91-CR-1101B and D as January 6, 2005.  Pet. Ex. H.  The United States contends that Elkins's probation in 91-CR-1101B was revoked and he was actually re-sentenced for that conviction on December 3, 1997.  Burke Decl. Ex. E.  According to the United States, the Wisconsin Department of Corrections later aggregated all of Elkins's sentences into one computation, with 91-CR-1101 governing his maximum release date.  Burke Decl. Ex. E.  As Elkins points out, though, the United States has not submitted any underlying documentation supporting this contention.  Elkins has also submitted a copy of an official court document indicating that the date of his re-sentencing after revocation in 91-CR-1101B was actually February 19, 1997, and not December 3, 1997, as the United States contends.  Docket No. 13 & attached exhibits.  On the basis of this record, the Court cannot determine the correct date, although it appears that Elkins has the better of the argument.

The Court need not resolve this dispute. Even if the Court agreed with Elkins that his sentence in 91-CR-1101 was completed on January 5, 2005, the fact remains that Elkins was in the physical custody of the State of Wisconsin until December 6, 2005. According to Elkins, he was serving his state sentence in 97-CF-494 after January 5, 2005. According to the United States, Elkins was serving an aggregation of state sentences — including his sentences in 97-CF-494 and 91-CR-1101 — after January 5, 2005. But both Elkins and the United States agree that Elkins was in the custody of the State of Wisconsin and serving *a* state sentence until December 6, 2005. Under 18 U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." According to § 3585(a), then, Elkins began serving his federal sentence on December 6, 2005.

Elkins argues that his federal sentence must nevertheless have begun on January 6, 2005 because Judge Stadtmueller could not, and did not, order his federal sentence to run consecutively to the later-imposed state sentence in 97-CF-494. (Again, in Elkins's view, this was the only state sentence that he was serving after January 5, 2005.) But under federal law, "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a). In other words, § 3584(a) establishes a presumption that a federal sentence runs consecutively to another sentence (federal or state) unless the judge that imposes that federal sentence affirmatively orders that it is to run concurrently. Thus, whether or not Judge Stadtmueller *could* have ordered that the federal

sentence run consecutively to the later-imposed state sentence[6] is irrelevant.  In the absence of an explicit order that the two sentences run concurrently, the two sentences run consecutively by operation of law.

Elkins also cites several cases in which a federal sentence was deemed to have begun earlier than the date the prisoner was taken into federal custody because federal authorities inexplicably failed to execute a court order or otherwise take the prisoner into custody in a timely manner.  *See, e.g.*, *Kiendra v. Hadden*, 763 F.2d 69 (2d Cir. 1985); *Smith v. Swope*, 91 F.2d 260 (9th Cir. 1937).  But in this case Elkins was in the uninterrupted custody of the State of Wisconsin, serving valid state sentences, from the date on which Judge Stadtmueller sentenced him until the date on which he was placed in federal custody.  Elkins offers no authority for the proposition that the BOP was required to take custody of him earlier despite these circumstances.  *Cf. Derengowski v. U.S. Marshal*, 377 F.2d 223, 224 (8th Cir. 1967) ("The exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties

---

[6]The Eighth Circuit permits district courts to order that a federal sentence run consecutively to a later-imposed state sentence (even when the inmate has not yet been convicted of the state charge); the Seventh Circuit, where Elkins was sentenced, does not.  *Compare United States v. Mayotte*, 249 F.3d 797, 798-99 (8th Cir. 2001) (per curiam) *with Romandine v. United States*, 206 F.3d 731, 737 (7th Cir. 2000).  But *Romandine* nevertheless held that the § 3584(a) presumption that sentences imposed at different times run consecutively applies even when the federal sentence is imposed first.  *Romandine*, 206 F.3d at 738.  As a practical matter, then, the Seventh Circuit has held that when a federal sentence is imposed before a state sentence, the two sentences *must*, so far as federal law is concerned, run consecutively, because district courts lack authority to order otherwise — precisely the opposite of the result that Elkins seeks in this case.  Similarly, in *Mayotte*, the Eighth Circuit explicitly relied on the fact that § 3584(a) "encourages consecutive sentences when prison terms are imposed at different times[.]"  *Mayotte*, 249 F.3d at 799.  Thus, in both circuits, when the sentencing court is silent, § 3584(a) renders the sentences consecutive as a matter of law.

which is not subject to attack by the prisoner."). Elkins thus began serving his federal sentence on the date the BOP took custody of him — December 6, 2005.

### B. Nunc Pro Tunc Designation

Elkins's second argument is that on August 19, 2005, he was granted a nunc pro tunc designation of the Wisconsin state prison as the "official detention facility" for purposes of his federal sentence. Docket No. 17 ¶ 9. According to the United States, Elkins's request for a nunc pro tunc designation was in fact denied on August 18, 2005. Docket No. 17, Exs. H, K, M.

Before examining Elkins's claim regarding the nunc pro tunc designation, the Court notes that Elkins is *not* claiming that the BOP wrongfully failed to consider or wrongfully denied a request for a nunc pro tunc designation. The Court therefore need not consider whether such claims are cognizable in this § 2241 case. The only question before the Court is a factual one: Did the BOP grant Elkins's request? Moreover, because the Court finds that Elkins has failed to submit sufficient evidence demonstrating that the BOP granted his request, the Court also need not consider whether the BOP could have granted Elkins's request for a nunc pro tunc designation notwithstanding the presumption established in § 3584(a).

When a prisoner is serving a state sentence in a state facility, a nunc pro tunc designation in effect renders a federal sentence concurrent to the state sentence. *See generally Eggers v. United States*, No. 06-3958 (DSD/JSM), 2006 WL 3825065, at *2-3 (D. Minn. Dec. 27, 2006). BOP Program Statement 5160.05 sets forth the procedure that the BOP follows when it receives a request from an inmate for a nunc pro tunc designation. After gathering documents and information and analyzing the request, the BOP notifies the prisoner of the decision in writing

and places a copy of that notification in the prisoner's file.  BOP Program Statement 5160.05(9)(b)(4)(e).

Elkins has not provided the Court with a copy of any such written notification.  Indeed, Elkins's original petition, filed in January 2006, did not assert that he had previously received a nunc pro tunc designation, despite the fact that he now claims he was notified of such a designation on August 19, 2005.  Docket No. 17 ¶ 9.  Elkins did not raise this argument until after the United States responded to his petition, and there is evidence in the record that Elkins was told on various occasions that his request had been denied.  *See, e.g.*, Docket No. 8, Exs. N-2, N-6; *see also* Docket No. 17 Ex. K ("sentence monitoring computation data" dated May 30, 2006 stating that "NCRO denied a nunc pro tunc request on 8-18-05").

It is rather difficult to believe that something as important as being granted a nunc pro tunc designation simply slipped Elkins's mind, especially as he is a persistent and thorough litigator.  Yet Elkins would now have the Court believe that on August 19, 2005, he was told that his nunc pro tunc designation had been granted and that his federal term would be deemed to have started on January 6, 2005.  Docket No. 17 ¶ 9.  Elkins offers no explanation for his earlier failure to make this claim, and his own submissions belie it.  *See* Elkins Letter (June 10, 2006) Ex. B (March 29, 2006 administrative remedy request form stating "I never got a decision on my 'nunc pro tunc' designation request (as you've claimed) because BOP said I wasn't it their datebase [sic].").

The basis of Elkins's claim that he has been granted a nunc pro tunc designation is a document entitled "public information inmate data" and dated January 30, 2006, which the United States first submitted in response to Elkins's original petition.  *See* Burke Decl. Ex. A.

After the United States submitted this document, Elkins began claiming that this document provided "proof" that his nunc pro tunc request had been granted. As noted, Elkins also changed his story and began claiming that he had been informed months earlier that his nunc pro tunc request had been granted.

The document on which Elkins relies is a computer printout consisting of a table of abbreviated information. The Court has reproduced the table below:

| FCL | Assignment | Description | Start Date/Time | Stop Date/Time |
|-----|------------|-------------|-----------------|----------------|
| WAS | A-DES | Designated, at assigned facil | 12-13-2005  1035 | Current |
| BO7 | RELEASE | Released from in-transit facl | 12-13-2005  1135 | 12-13-2005  1135 |
| BO7 | A-ADMIT | Admitted to an in-transit facl | 12-13-2005  0700 | 12-13-2005  1135 |
| OXF | HLD REMOVE | Holdover removed | 12-13-2005  0600 | 12-13-2005  0600 |
| OXF | A-HLD | Holdover, temporarily housed | 12-12-2005  1210 | 12-13-2005  0600 |
| 5-M | RELEASE | Released from in-transit facl | 12-12-2005  1310 | 12-12-2005  1310 |
| 5-M | A-ADMIT | Admitted to an in-transit facl | 11-15-2005  1916 | 12-12-2005  1310 |
| CCH | ADMIN REL | Administrative release | 11-15-2005  1816 | 11-15-2005  1816 |
| CCH | A-ADMIN | Administrative admission | 11-15-2005  1803 | 11-15-2005  1816 |
| 3-X | RELEASE | Released from in-transit facl | 11-15-2005  1903 | 11-15-2005  1903 |
| 3-X | A-ADMIT | Admitted to an in-transit facl | 08-19-2005  1458 | 11-15-2005  1903 |

| NCR | ADMIN REL | Administrative release | 08-19-2005  1358 | 08-19-2005  1358 |
| --- | --- | --- | --- | --- |
| NCR | A-ADMIN | Administrative admission | 08-19-2005  1357 | 08-19-2005  1358 |

Burke Decl. Ex. A.

In response to a question from Elkins, a BOP staff member informed Elkins that the first column refers either to where Elkins was being housed on that date or, in the case of "administrative" release or admission, to the identity of the person working on his file: "'Administrative admission' means some one was working on your file and you were not physically at that facility." Elkins Letter (June 10, 2006) Ex. I. "NCR" means "North Central Region," *id.*, apparently a reference to the BOP's North Central regional office.

While not a model of clarity, these explanations do not support Elkins's contention that this document proves he was granted a nunc pro tunc designation on August 19, 2005. Instead, they simply demonstrate that someone in the BOP was working on his file on that date, which, given that Elkins was soon to be transferred to federal custody, is not surprising. Notably, the only entry indicating that Elkins was designated to a federal facility is dated December 13, 2005, after the BOP took custody of him. Nor is there anything in this document that refers to or even remotely relates to the date of January 6, 2005 — which, according to Elkins, is the date on which the BOP decided that he began serving his federal sentence.

In short, Elkins has failed to substantiate his claim that he was granted a nunc pro tunc designation on August 19, 2005. Indeed, Elkins's own conduct and inconsistent statements render that claim inherently incredible. Elkins's § 2241 petition is denied.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, the Court ADOPTS Judge Noel's November 21, 2006 Report and Recommendation [Docket No. 22]. IT IS HEREBY ORDERED THAT:

1. Petitioner's petition for writ of habeas corpus [Docket No. 1] is DENIED.

2. Petitioner's motions [Docket Nos. 9, 10, 11, 12, 14, 21] are DENIED.

3. This case is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: January 26, 2007          s/Patrick J. Schiltz
                                 Patrick J. Schiltz
                                 United States District Judge